**Opinion issued April 24, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-13-00170-CR**

**NO. 01-13-00171-CR**

———————————

**NATHAN G. MIMS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 434th District Court**
**Fort Bend County, Texas**
**Trial Court Case Nos. 12-DCR-060656A & 12-DCR-060657A**

---

**OPINION**

Appellant Nathan Mims was charged by indictment with evading arrest, two counts of burglary of a habitation, aggravated assault against a public servant, and possession of marijuana. The State dismissed the aggravated assault against a

public servant and possession of marijuana charges on the day of the trial—proceeding to trial only on the charges of burglary of a habitation and evading arrest in a motor vehicle. Mims pleaded guilty to evading arrest, and a jury found Mims guilty of one count of burglary of a habitation. Mims was sentenced to ten years in prison for evading arrest and 16 years for burglary of a habitation, and he appealed both judgments. Finding no error, we affirm.[1]

## Background

On May 29, 2012, Irving Guenther was sleeping upstairs in his parents' home when he heard someone breaking down the front door. He screamed, "what's going on" from upstairs. Irving testified that as soon as the intruder heard him scream, he ran, got in his car, and drove away. Irving ran outside to look at the license plate of the car, made eye contact with the burglar, and called the police. After Irving called 911, Mims led multiple vehicles from the Fort Bend County Sheriff's office, Fort Bend County Constable Precinct 4, Sugar Land Police, and Texas Department of Public Safety on a car chase, at one point driving through someone's front and backyard, before he was apprehended.

---

[1] Appellate cause number 01-13-00170 is the appeal from the conviction for burglary of a habitation (trial court number 12-DCR-60656A), and appellate cause number 01-13-00171 is the appeal from the conviction for evading arrest (trial court number 12-DCR-60657A). We address all of Mims's points of error from both cases in this opinion.

Irving testified that he had not invited anyone over to the house that morning. He identified Mims as the intruder in a photo lineup and at trial.

Irving's mother, Araceli, testified that she locked the front door before she left for work that morning. She also testified that she never gave Mims permission to be in the home, but acknowledged that Mims knew her son Kirk, who no longer lived in the home, and that Kirk may have given Mims permission.

### Section 38.04 of the Texas Penal Code

In his sole point of error in appellate cause number 01-13-00171-CR, Mims contends that section 38.04 of the Texas Penal Code, the evading arrest statute, is unconstitutional because it "legislates two different levels of crime and punishment for the same conduct." [2]

### A.    Standard of Review

An "analysis of a statute's constitutionality must begin with the presumption that the statute is valid and that the Legislature did not act arbitrarily or unreasonably in enacting it." *State v. Rosseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013) (citing *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002)). The individual challenging the statute has the burden to establish its unconstitutionality. *Id.* (citing *Lykos*, 330 S.W.3d at 908). To prevail on a facial challenge, a party must establish that the statute always operates unconstitutionally

---

[2]    Mims made an oral motion to dismiss the evading arrest charge before trial began, arguing that the statute was unconstitutional, and the trial court denied the motion.

3

in all possible circumstances. *Rosseau*, 396 S.W.3d at 557. "A facial attack upon a penal statute is solely and entirely a legal question and is always subject to *de novo* review." *Karenev v. State*, 281 S.W.3d 428, 435 (Tex. Crim. App. 2009).

**B.     Applicable Law**

Under Texas Penal Code section 38.04(a), a person commits the offense of evading arrest or detention if he "intentionally flees from a person he knows is a peace officer or federal special investigator attempting lawfully to arrest or detain him." TEX. PENAL CODE ANN. § 38.04(a). Before May 23, 2011, section 38.04(b) governed whether the offense was punishable as a state jail felony or a felony of the third degree, as follows:

> (1) a state jail felony if:
>
> > (A) the actor has been previously convicted under this section; or
> >
> > (B) the actor uses a vehicle while the actor is in flight and the actor has not been previously convicted under this section;
>
> (2) a felony of the third degree if:
>
> > (A) the actor uses a vehicle while the actor is in flight and the actor has been previously convicted under this section; or
> >
> > (B) another suffers serious bodily injury as a direct result of an attempt by the officer from whom the actor is fleeing to apprehend the actor while the actor is in flight . . . .

Act of May 27, 2009, 81st Leg., R.S., ch. 1400, § 4, sec. 38.04, 2009 Tex. Gen. Laws 4385, 4385–86.

4

On May 23, 2011, Senate Bill 496 amended subsections (b)(1) and (b)(2) to provide that a violation of 34.08(a) was:

(1) a state jail felony if:

(A) the actor has been previously convicted under this section; or

(B) the actor uses a vehicle <u>or watercraft</u> while the actor is in flight and the actor has not been previously convicted under this section;

(2) a felony of the third degree if:

(A) the actor uses a vehicle <u>or watercraft</u> while the actor is in flight and the actor has been previously convicted under this section; or

(B) another suffers serious bodily injury as a direct result of an attempt by the officer from whom the actor is fleeing to apprehend the actor while the actor is in flight . . . .

Act of May 23, 2011, 82d Leg., R.S., ch. 391, § 1, sec. 38.04, 2011 Tex. Gen. Laws 1046, 1046–47

However, four days later, on May 27, 2011, Senate Bill 1416 amended subsections (b)(1) and (b)(2) again, to remove (b)(1)(B) entirely, and to amend (b)(2)(A) and add (b)(2)(C). Senate Bill 1416 provided that a violation of 34.08(a) was:

(1) a state jail felony if:[

[(A)] the actor has been previously convicted under this section; [or

5

[(B) the actor uses a vehicle ~~or watercraft while the actor is in flight and the actor has not been previously convicted under this section;~~]

(2) a felony of the third degree if:

(A) the actor uses a vehicle <u>or watercraft</u> while the actor is in flight [~~and the actor has been previously convicted under this section~~]; [~~or~~]

(B) another suffers serious bodily injury as a direct result of an attempt by the officer from whom the actor is fleeing to apprehend the actor while the actor is in flight; or

(C) the actor uses a tire deflation device against the officer while the actor is in flight . . . .

Act of May 27, 2011, 82d Leg., R.S., ch. 920, § 3, sec. 38.04, 2011 Tex. Gen. Laws 2321, 2322.

As a result of the May 27 amendment, evading arrest while using a vehicle in flight became punishable as a third degree felony, and not a state jail felony.

**C.    Analysis**

Mims bases his constitutional challenge to section 38.04 on the version of the statute that was enacted on May 23, 2011, when Senate Bill 496 passed. Specifically, Mims contends that iteration of section 38.04(b) is unconstitutional because it provides for two different punishments for the same conduct insofar as the offense of evading arrest using a vehicle while in flight was punishable as a state jail felony under (b)(1)(B) and a third degree felony under (b)(2)(A). Mims

6

makes no mention of the fact that 38.04(b) was amended again on May 27, to remove (b)(1)(B).

Senate Bill 496 and Senate Bill 1416 both stated that the amendments would take effect September 1, 2011. Act of May 23, 2011, 82d Leg., R.S., ch. 391, § 3, 2011 Tex. Gen. Laws 1046, 1046–47; Act of May 27, 2011, 82d Leg., R.S., ch. 920, § 5, 2011 Tex. Gen. Laws 2321, 2322. Because Senate Bill 1416 passed on May 27, four days after Senate Bill 496 passed, and effectively repealed the portion of Senate Bill 496 that Mims challenges, we conclude that Senate Bill 1416 superseded Senate Bill 496. *See* TEX. GOV'T CODE ANN. § 311.025(b) (stating that "if amendments to the same statute are enacted at the same session of the legislature, one amendment without reference to another [and] the amendments are irreconcilable, the latest in date of enactment prevails); *State v. Preslar*, 751 S.W.2d 477, 481 (Tex. 1988) (orig. proceeding) (indicating that in determining whether bills are reconcilable, courts may consider the object to be attained, the circumstances under which the statute was enacted, and the legislative history); *Price v. State*, 35 S.W.3d 136, 142 (Tex. App.—Waco 2000, pet. ref'd) (stating that a court's role in interpreting the effects of amendments is to "look for and give effect to the [legislature's] intent"). Because Senate Bill 496, which includes the provisions about which Mims complains, was not the law at the time Mims was

arrested, his constitutional challenge to section 38.04 fails. We overrule Mims's

sole point of error in cause number 01-13-00171-CR.[3]

## Limitation of Voir Dire

In his third point of error, Mims contends that the trial court erred in limiting

his voir dire on the issue of mitigating or aggravating factors. He contends that he

needed information about the factors the venire thought were relevant to

punishment in order to make his challenges for cause.

### A.    Standard of Review and Applicable Law

We review the trial court's restriction of voir dire for an abuse of discretion.

*Barajas v. State*, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002). Questions attempting

to commit venire members to give mitigating or aggravating effect to particular

facts are improper. *See Sells v. State*, 121 S.W.3d 748, 756–57 (Tex. Crim. App.

2003) (en banc). If such questions are allowed and a member of the venire states

that he would not consider a particular type of evidence as mitigating, that member

of the venire cannot be challenged for cause on that basis. *See Morrow v. State*,

910 S.W.2d 471, 473 (Tex. Crim. App. 1995).

### B.    Analysis

During voir dire, Mims asked, "If you decided that somebody was guilty,

then what factors would you consider in determining such a person's punishment?"

---

[3]    The remaining points of error relate to Mims's appeal in the burglary of a habitation case, which is appellate cause number 01-13-00170-CR.

The trial court instructed Mims's counsel to instead ask whether they would consider specific factors to be mitigating or aggravating, rather than asking what factors they consider important in an open-ended way. Because Mims sought to have venire members commit to give mitigating or aggravating effect to particular facts, his question was improper, and a venire person's answer to that question could not have been the basis for a valid challenge for cause. *See Standefer v. State*, 59 S.W.3d 177, 181 (Tex. Crim. App. 2001) (stating that "a prospective juror is not challengeable for cause simply because he does not consider a particular type of evidence to be mitigating"); *Raby v. State*, 970 S.W.2d 1, 3-4 (Tex. Crim. App. 1998) (holding that "trial court does not abuse its discretion by refusing to allow a defendant to ask venire members questions . . . about particular mitigating evidence"). Therefore, we hold that the trial court did not abuse its discretion in limiting Mims's voir dire, and we overrule Mims's third point of error.

**Cross-Examination**

In his fourth point of error, Mims contends that the trial court erred in refusing to allow him to present evidence to support his defenses—that he did not intend to commit theft and that he had effective consent to enter the home—through cross-examination of Irving and Araceli.

## C. Standard of review

We review a trial court's decision to limit cross-examination under an abuse of discretion standard. *Ho v. State*, 171 S.W.3d 295, 304 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (citing *Love v. State*, 861 S.W.2d 899, 903 (Tex. Crim. App. 1993) (en banc)). When a trial court denies a defendant the opportunity "to elicit specific responses from [a] State's witness," error is preserved by (1) calling the witness to the stand outside the presence of the jury and asking specific questions or (2) making an offer of proof that demonstrates what questions would have been asked and the expected answers to those questions. *See Koehler v. State*, 679 S.W.2d 6, 9 (Tex. Crim. App. 1984) (en banc); *Stults v. State*, 23 S.W.3d 198, 203 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd).

## D. Analysis

Mims complains that the trial court erred by preventing him from eliciting answers to three questions on cross-examination. First, Mims asked Irving, "[W]hen [Mims] broke into your house, he was looking for your brother, Kirk; is that correct?" The State objected, "Objection, that calls for speculation," and the trial court sustained the objection.

Second, Mims asked Araceli, "And the burglar could have just grabbed the box and run; isn't that correct?" The State objected, "Judge, I'm going to object, that calls for speculation," and the trial court sustained the objection.

Third, Mims asked Araceli, "[C]ould [Mims] have ever spent the night in your guest bedroom without your knowledge?" The State objected, "I'm going to object, that calls for speculation, it's a vague question," and the trial court sustained the objection.

In each instance, Mims continued with cross-examination and he never made offers of proof or bills of exception. Accordingly, we hold that his claim that the trial court improperly denied him the opportunity to elicit responses to these questions was not preserved for our review. *See Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009) (to preserve error regarding trial court's exclusion of evidence, complaining party must comply with Rule of Evidence 103(a) by making an offer of proof which sets forth the substance of the proffered evidence); *Watts v. State*, 371 S.W.3d 448, 464 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (concluding appellant failed to preserve error and stating that "[w]ithout an offer of proof, [the appellate court] decline[s] to speculate about the nature of the [witness's] excluded testimony."). Accordingly, we overrule Mims's fourth point of error.

**Admissibility of Pre-trial Photo Lineup**

In his fifth point of error, Mims contends that the trial court erred in admitting evidence that Irving identified Mims in a pre-trial photo lineup. Mims contends the photo array was impermissibly suggestive because not all of the subjects had beards and most of them were of a heavier build than Mims.

## A. Standard of Review and Applicable Law

We review *de novo* a trial court's ruling on the suggestiveness of a pre-trial photo array. *Gamboa v. State*, 296 S.W.3d 574, 581 (Tex. Crim. App. 2009). The defendant bears the burden of establishing by clear and convincing evidence that the procedure was impermissibly suggestive. *Page v. State*, 125 S.W.3d 640, 647 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). We consider the totality of the circumstances in order to determine whether "'the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *Gamboa*, 296 S.W.3d at 581–82 (quoting *Simmons v. United States*, 390 U.S. 377, 384, 88 S. Ct. 967, 971 (1968)). The court does not consider whether the procedures created a substantial likelihood for irreparable misidentification unless the court has first determined that the procedures were impermissibly suggestive. *Barley v. State*, 906 S.W.2d 27, 33 (Tex. Crim. App. 1995) (en banc); *Cantu v. State*, 738 S.W.2d 249, 251-52 (Tex. Crim. App. 1987) (en banc).

**B.    Analysis**

The content of a photo array may be suggestive if the suspect is the only individual who closely resembles the witnesses' description. *Barley*, 906 S.W.2d at 33.  But "lineup participants need not be identical to satisfy due process requirements." *Luna v. State*, 268 S.W.3d 594, 607–08 (Tex. Crim. App. 2008).

Here, Detective Bell of the Fort Bend Sheriff's office compiled a photo lineup containing six photographs—one of Mims and five of men matching the general description given of Mims—from which Irving identified Mims as the burglar.  The six photographs were admitted as State's Exhibit 21.  We conclude that the trial court did not err in admitting evidence of the pre-trial identification because all six men in the photo array fit the rough description of Mims—all were black males of similar age, build, hair style, and with similar facial hair.  *See Buxton v. State*, 699 S.W.2d 212, 216 (Tex. Crim. App. 1985) (pre-trial lineup was not unduly suggestive, even though height, weight, and skin tone of individuals in lineup varied); *Burks v. State*, No. 01-10-00633-CR, 2012 WL 151463, at *3–4 (Tex. App.—Houston [1st Dist.] Jan. 19, 2012, no pet.) (mem. op., not designated for publication) (holding photo lineup was not impermissibly suggestive because all men fit general description of appellant—wore braids and were of similar age, race, and size).  Accordingly, we overrule Mims's fifth point of error.

**Pre-trial Motion to Dismiss and Directed Verdict**

In his second point of error, Mims contends that the trial court erred in denying his oral pre-trial "motion to dismiss [for] insufficiency of the evidence," which the trial court construed as a pre-trial motion for directed verdict, and his motion for directed verdict made at the close of evidence. According to Mims, there was insufficient evidence to convict him of burglary of a habitation because he had apparent authorization to enter the home and, therefore, the State could not establish that Mims entered without consent.

**A. Standard of Review**

"We treat a complaint of a denial of a motion for directed verdict as a challenge to the sufficiency of the evidence to support a conviction." *Lewis v. State*, 193 S.W.3d 137, 139–40 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (citing *Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996)). When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *McGregor v. State*, 394 S.W.3d 90, 109 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979)).

**B.    Applicable Law**

A person commits the offense of burglary of a habitation if, without consent of the owner, he enters a habitation with the intent to commit theft. TEX. PENAL CODE ANN. § 30.02(a) (West 2011). Effective consent is defined as assent in fact, whether express or apparent, and includes assent by a person legally authorized to act for the owner. *See* TEX. PENAL CODE ANN. §§ 1.07(a)(11),(19), 31.01(3) (West 2011).

**C.    Analysis**

To prove that Mims committed burglary of a habitation, the State had to prove beyond a reasonable doubt that Mims entered a habitation without the owner's consent and with the intent to commit theft. *See* TEX. PENAL CODE ANN. § 30.02(a).

We conclude that the evidence supports a rational inference that Mims entered the Guenther home without consent and with intent to commit theft. First, Mims entered by kicking in the front door, and Araceli testified that she did not give Mims permission to enter the home. Second, Mims exhibited a consciousness of guilt—he ran after hearing Irving scream and then he led police on a car chase.

Viewing this evidence in the light most favorable to the verdict, we conclude that a rational juror could have found that Mims entered the home without consent of the owner and with intent to commit theft. *See Bigby v. State*, 892 S.W.2d 864,

883 (Tex. Crim. App. 1994) ("Evidence of flight or escape is admissible as a circumstance from which an inference of guilt may be drawn."); *Ellet v. State*, 607 S.W.2d 545, 550 (Tex. Crim. App. [Panel Op.] 1980) (testimony that no consent given sufficient to establish absence of effective consent); *Rangel v. State*, 179 S.W.3d 64, 69 (Tex. App.—San Antonio 2005, pet. ref'd) (finding sufficient evidence of lack of consent where appellant had previously had access to the residence, but owner testified that accused was not given permission to enter on the day in question). Accordingly, we conclude that the trial court did not err in denying Mims's motion for directed verdict, and we overrule Mims's second point of error.[4]

## Extraneous Offense Instruction

In his first point of error, Mims contends that the trial court erred in denying his request for an extraneous offense instruction in the jury charge.

### A.    Standard of Review

In analyzing a jury-charge issue, our first duty is to decide if error exists. *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003) (en banc). Only if we find error do we then consider whether an objection to the charge was made

---

[4] We hold that the trial court did not err in denying Mims's pre-trial motion because a motion to dismiss for insufficient evidence is not a proper pre-trial motion. *See Lawrence v. State*, 240 S.W.3d 912, 916 (Tex. Crim. App. 2007) (quoting *Woods v. State*, 153 S.W.3d 413, 415 (Tex. Crim. App. 2005)) (stating that pre-trial motions "cannot be used to 'argue that the prosecution could not prove one of the elements of the crime," and a pre-trial proceeding should not be a 'mini-trial' on the sufficiency of the evidence to support an element of the offense")).

16

and analyze for harm. *Id.* "When the defendant fails to object or states that he has no objection to the charge, we will not reverse for jury-charge error unless the record shows 'egregious harm' to the defendant." *Ngo v. State*, 175 S.W.3d 738, 734–44 (Tex. Crim. App. 2005) (en banc).

**B. Analysis**

Before voir dire, Mims requested a two-paragraph limiting instruction regarding the extraneous offense of aggravated assault on a public servant. The trial court ruled that it would include the first paragraph, but denied Mims's request to include the second.

Although Mims anticipated that the State would introduce evidence of the aggravated assault on a public servant, the State actually presented no evidence regarding the offense, nor did the State mention the offense in opening or closing argument. Because the State presented no evidence of the extraneous offense, we hold that trial court did not err in refusing to charge the jury with a portion of Mims's requested limiting-instruction. *See Bluitt v. State*, 137 S.W.3d 51, 54 (Tex. Crim. App. 2004) (holding that "such an instruction is a useless act if no unadjudicated offenses have been introduced"); *Graves v. State*, 176 S.W.3d 422, 436 (Tex. App.—Houston [1st Dist.] 2004, pet. struck) (holding trial court did not err in failing to instruct jury on extraneous offense where there was no evidence of an extraneous offense). Accordingly, we overrule Mims's first point of error.

## Improper Jury Arguments

In his sixth and seventh points of error, Mims contends that the prosecutor made improper jury arguments during closing argument because the prosecutor (1) injected new facts harmful to Mims and (2) misstated the law.

### A. Standard of Review

"The law provides for, and presumes, a fair trial free from improper argument by the State." *Thompson v. State*, 89 S.W.3d 843, 850 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (citing *Long v. State*, 823 S.W.2d 259, 267 (Tex. Crim. App. 1991) (en banc)). The approved areas of jury argument are (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to the argument of opposing counsel, and (4) plea for law enforcement. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000) (en banc); *Andrade v. State*, 246 S.W.3d 217, 229–30 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). Wide latitude is allowed in drawing inferences from the evidence, so long as the inferences drawn are reasonable, fair, legitimate, and offered in good faith. *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988). In examining challenges to a jury argument, a court considers the remark in the context in which it appears. *Id.*

**B.      Analysis**

In the first of the two comments about which Mims complains, the prosecutor argued:

> Kirk, who he's purporting to help and be his friend, and only at a distance because he's tired of him and he doesn't want to deal with him anymore.  Kirk and the defendant are not friends, not at all.

Mims objected, "Objection, that's for the jury to decide," and the trial court overruled Mims's objection, noting "[t]hat's what arguments are for."  On appeal, Mims argues this argument "injected new facts" harmful to Mims.

In the second complained-of portion of the prosecutor's argument, the prosecutor said:

> [O]nly the things that you heard from that witness stand, testimony from those witnesses and the admitted evidence is the only thing that's going to be considered.  Not of assumptions of, well, what if this.  Well, is it possible this?  No, only evidence.  So, any theories or so forth that are supported by the evidence, then you consider it, if they're not, it's not there.

Mims objected, "Objection, Your Honor, that misstates the law.  I think the jury's already been instructed earlier in the case that reasonable alternative hypothesis are legitimate."  The prosecutor responded, "Your Honor, that's what I just said, anything supported by law or reasonable thereof," and the trial court overruled the objection.

Neither of these comments was improper, because the prosecutor properly encouraged the jury to make reasonable deductions from the evidence.  *See*

19

*Wesbrook*, 29 S.W.3d at 115. In the first comment, the prosecutor was urging the jury to deduce that Kirk and Mims were not friends. This was a reasonable deduction from the evidence, because Irving testified that he did not recognize Mims when he saw Mims fleeing his home, that Kirk had never mentioned Mims to Irving, and that Mims did not look like someone who may "have hung around" Kirk. Araceli had also testified that, although she was not certain she had ever seen Mims before the incident, she knew she had never heard of Mims.

In the second comment, the prosecutor argued—correctly—that the jury should consider only theories supported by the evidence. Because a prosecutor may argue, in general terms, that the jury should make logical inferences drawn only from the evidence, we hold that the trial court did not err by overruling Mims's objections to these comments. *See Borjan v. State*, 787 S.W.2d 53, 57 (Tex. Crim. App. 1990) (holding proper "to draw from the facts in evidence all inferences which are reasonable, fair and legitimate, but he may not use the jury argument to get before the jury, either directly or indirectly, evidence which is outside the record"). Accordingly, we overrule Mims's sixth and seventh points of error.

## Conclusion

We affirm the trial court's judgment.

Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and Justices Massengale and Huddle.

Publish.  TEX. R. APP. P. 47.2(b).